PLOTKIN, Judge.
The plaintiff, Kevin Broussard, appeals a decision of the trial court affirming a decision of the Louisiana State Racing Commission (LSRC) suspending Broussard for a period of one year because a horse that Broussard trained tested positive for the presence of an illegal substance in its system. We affirm.
FACTS:
On April 11, 1991, “Big Jim Tonkaton,” a quarterhorse, trained by plaintiff, was the subject of a routine drug test after winning the eighth race at Delta Downs. On April 19, 1991, the state chemist from the Louisiana State University School of Veterinary Medicine, reported that the urine sample tested positive for the presence of etor-phine, a banned substance. On April 27, 1991, a hearing was held before the stewards of Delta Downs. The stewards issued rule 045 suspending Broussard for 10 days and submitting the matter the L.S.R.C. for further consideration. Additionally, “Big Jim Tonkaton” was disqualified from the race and the purse was redistributed.
Broussard requested that the urine sample be split and tested by a referee equine testing laboratory. Broussard was informed that he could have the sample tested by the labs at Ohio State University, Iowa State University and Industrial Laboratories, Co. in Denver, Colorado. However, Broussard desired that Truesdail Laboratories be the referee testing facility. Therefore, Broussard sought an injunction allowing him to have a facility of his choice test the split sample. On May 20,1991, the trial court issued a temporary restraining order prohibiting the Louisiana Racing Commission from proceeding in this matter until Broussard could have the sample tested by a laboratory of his choice.
The split sample was tested by Truesdail Laboratory which did not confirm the presence of etorphine in the sample. The report issued by Truesdail states that there is “insufficient evidence to say that this sample contains etorphine.”
On Wednesday, June 14, 1991, Brous-sard’s counsel was notified that the Racing Commission would not accept the findings of Truesdail Laboratories. The deposition of Dr. Norman Hester, Technical Director of Truesdail Laboratories, was taken and read into the record of the Racing Commission’s hearing on Broussard’s appeal. By a vote of 4-3, the Commission affirmed Broussard’s suspension. On June 27, 1991 Broussard filed for relief in district court seeking review of the Commission’s decision pursuant to La.R.S. 49:964. On July 1, 1991, Gerald Libersat, the owner of “Big Jim Tonkaton,” filed a Petition of Intervention and was granted leave to intervene.
On March 18, 1992, the trial court, affirmed the Racing Commission’s decision. The trial court held that, although Trues-dail Laboratories had not confirmed the presence of etorphine, Broussard had not carried his burden of proof in disproving the state chemist’s determination that etor-phine was present in the sample. Brous-sard appeals this judgment.
Broussard alleges the following assignment of errors: 1) The trial court erred when it required Broussard to disprove the findings of the state chemist; 2) The trial court erred in not awarding Gerald Liber-sat the sum of $7,479; 3) The trial court erred in not awarding Broussard reasonable litigation expenses. Because we find that the Racing Commission was correct in its determination, Broussard’s second and third assignment of error are rendered moot.
DISCUSSION—
Broussard’s argument is two fold. First, he asserts that he has a right to have any independent, qualified laboratory test the split sample. Second, he argues that once he showed that the independent laboratory could not confirm the presence of the prohibited substance the charges against him should have been dismissed.
Referee Laboratories—
Broussard argues that the Racing Commission cannot restrict his ability to choose the facility to conduct the referee testing of the sample. The first question in this analysis is whether the Racing Commission has the authority to limit the trainer’s ability to have a facility of his choice test the *670 split sample. The second question then becomes did the Commission properly promulgate the list of acceptable facilities. This court answers both questions in the affirmative.
The Rules of Racing in effect at the time of the infraction provided that in a situation where a split sample needed to be tested the “trainer timely requesting a testing of a split or referee sample may elect any one of the laboratories, classified and designated as alternate laboratories, to perform the testing.” (emphasis added) L.A.C. 35:I.1775(D). The amended Rules of Racing concerning the same subject provide that “[a] trainer timely requesting a testing of a split or referee sample shall select one of the laboratories designated by the commission as referee laboratories to perform the testing.”- L.A.C, 35.T.1775 (as amended 1991).
Clearly, both the old and new provisions envision that the Commission would classify and designate a referee testing facility. Additionally, both rules state that the trainer is bound to choose from among these selections. Section (C) of the new section 1775 makes this interpretation abundantly clear where it states that “[t]he Commission shall provide a list of referee laboratories which must be able to demonstrate competency for that drug or substance at the estimated concentration reported by the primary laboratory, from which the trainer must select one.” Clearly, this provision simply clarifies the types of laboratories which are to be “classified and designated as alternate laboratories” as envisioned in the prior law. Thus, there is no prohibition to applying the rule retrospectively.
One reason for allowing the Racing Commission to limit the choice of laboratories is evidenced in this case. Here the state chemist tested the urine sample and detected evidence of etorphine at 0.02-0.05 ng/ml of urine. It provided this information to Truesdail. However, Truesdail’s limit of detection was 0.5-1.0 ng/ml of urine. The state chemist opined that its ability to detect the drug was 10-50 times greater than that of Truesdail. This fact served as the reason for the trial court stating that Trues-dail’s findings were not sufficient to overturn the state chemist’s determinations. Additionally, this situation is exactly what the Racing Commission is attempting to avoid when it limits the choice of laboratories to those facilities which have the capacity to detect the presence of prohibited substances at very low levels. Furthermore, Subsection C of amended § 1775 explicitly states that the Commission shall limit the available laboratories who are “able to demonstrate competency” for a substance at a particular concentration. Thus, both the old and new law grant the Commission the authority to limit the trainers choice of referee laboratories to those it has classified as alternate facilities.
The next question is whether the Commission's list of alternate laboratories complied with procedural rules. Plaintiff argues that the Commission’s list of alternate laboratories was a “rule” as defined by La.R.S. 49:951(6). As such, in order to be effective, the list should have been adopted and promulgated in accordance with La.R.S. 49:954. It is uncontested that the list of acceptable referee facilities was neither adopted nor promulgated by the Racing Commission as a new “rule” under La.R.S. 49:950 et seq. Thus, the plaintiff argues that the list, which limits his ability to choose his own referee facility, should not be given effect.
La.R.S. 49:951(6) defines a “rule” in pertinent part as follows: “Rule means each agency statement, guide or requirement for conduct or action, ... which has general applicability and the effect of implementing or interpreting substantive law or policy or which prescribes the procedure of practice requirements of the agency.” Broussard argues that the list was indeed a “rule” as defined by § 951(6) because it sets forth a “guide or requirement for conduct or action” by requiring that the licensee send the split sample to one of the chosen laboratories. Additionally, plaintiff argues that the list is “generally applicable” because it applies to all licensees of the Commission. Finally, he contends that the list has the “effect of implementing or *671 interpreting substantive law or policy” because it interprets LAC 35:1719.
Although the list of acceptable laboratories limits every licensee’s ability to choose a referee laboratory, it is not a “rule” as defined by La.R.S. 49:951(6). As noted above, the Commission has been granted the authority to choose certain referee laboratories from which trainers must choose. Thus, the listing of these facilities was merely an execution of the existing rule and not the making of a separate rule which must comply with administrative procedures. To require an agency to adopt and promulgate every writing which is designed to effectuate a rule would work an absurd result in the law. Thus, the list was valid and Broussard was bound to choose from among those laboratories.
Although the Commission properly decided that it would not consider Truesdail’s findings, the trial court apparently did so. Thus, clearly Broussard was not prejudiced by the Commission’s refusal to accept Truesdail’s findings as not being one of the accepted laboratories.
Burden of Proof—
After weighing Truesdail’s findings against those of the state chemist the trial court found that “Truesdail’s failure to confirm the presence of etorphine is not sufficient to disprove the presence of etor-phine because Truesdail’s test was incapable of detecting etorphine at the level that was found present by the state chemist.” Broussard argues that the trial court applied an incorrect burden of proof in that he must “disprove” the findings of the state chemist. Broussard argues that §§ (F) of amended § 1775 of the Rules of Racing requires that the trainer only present evidence that the referee laboratory “cannot confirm” the presence of the prohibited substance and not to “disprove” the findings of the state chemist. We disagree.
First, § 1729 of the Rules of Racing provides that the state chemist’s statement that the sample tested positive for a prohibited substance shall be taken as prima facie evidence that the owner, trainer or groom has been negligent in the handling of the horse. This court in Robideaux v. Louisiana State Racing Commission, 470 So.2d 139 (La.App. 4th Cir.1985), held that this section imposed a burden on the plaintiff to disprove the findings of the state chemist. “Since the state chemist’s report was positive for (a prohibited substance) the burden of proof was on the plaintiff to disprove the presence of the substance in the horse’s urine.” Id. at 141. Section 1729 and its interpretation under Robideaux was the law in effect at the time of the violation and trial court’s determination. Therefore, the burden was on the plaintiff to disprove the findings of the state chemist. The trial court found that Truesdail’s analysis was insufficient to disprove the state chemist’s findings because Truesdail’s testing procedures were not sensitive enough to detect the etorphine at the reported level. The trial court’s findings are supported by the record and will not be disturbed.
However, Broussard seeks to benefit from §§ F of § 1775 which was added in the amendments to § 1775 in 1992. Subsection F of § 1775 provides that “[i]f a split portion of the test does not confirm the findings of the primary laboratory, the commission shall not consider the sample to constitute prima facie evidence of a violation of the applicable provisions of this chapter and no penalty shall be imposed, except as provided in Subsection G hereof.” [1] Broussard argues that this section only requires that he introduce evidence which “does not confirm” the state chemist’s findings. Therefore, he did not have the burden to disprove the state’s findings. While Broussard’s argument has merit as to the interpretation of subsection F, the subsection is not applicable to the instant case.
Clearly, the new subsection changes two aspects of prior law. First, if the *672 referee laboratory cannot confirm the state’s findings then the presumption that the state’s findings are prima facie evidence of the plaintiff’s misconduct is removed. More importantly, however, subsection F requires that upon a non-confirmation no penalties are to be imposed. Thus, the new subsection clearly places a burden on the plaintiff to prove only that the referee laboratory has not confirmed the findings of the state in order to escape the penalties imposed by the Rules of Racing. This new burden of proof is significantly different from the prior requirement that the plaintiff disprove the findings of the state.
However, this section was enacted as part of the 1992 amendments to the Rules of Racing and went into effect on August 31, 1992. It was not in effect at the time of the violation or at the time of the trial court’s judgment. Because this section clearly changes the applicable law on the burden of proof to be employed, it cannot be applied retrospectively.
CONCLUSION:
Accordingly, the judgment of the trial court is affirmed.. All costs of this appeal are assessed against the appellant.
SCHOTT, C.J., concurs in the result.

. §§ G provides that "[i]f, through no fault of the commission, it agents or employees, a split portion of the sample cannot be tested because of loss, damage, or decomposition then, and in that event only, the findings of the primary laboratory shall constitute the prima facie evidence of a violation of the applicable provisions of this Chapter.